UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
BUFFALO OFFICE

| | |
|---|---|
| MONTANA GORSUCH, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:19-cv-1357 |
| ) | |
| v. ) | |
| ) | |
| PREMIER RECOVERY GROUP ) | |
| INC. a/k/a GREEN SQUARE ) | |
| COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST DEFENDANT PREMIER RECOVERY GROUP INC.**

Now comes Montana Gorsuch ("Plaintiff") and hereby moves for summary judgment as to liability on his claims against Premier Recovery Group Inc. ("Defendant"). Because Defendant was ordered by this Court to respond to Plaintiff's discovery within 14 days, but it has not done so, Plaintiff asks that this Court take as admitted the Requests for Admission that Plaintiff served on Defendant. Together with Plaintiff's declaration, sufficient facts have been established to impose liability on Defendant under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.

**I.      PROCEDURAL POSTURE.**

Plaintiff filed his original Complaint on October 4, 2019, alleging violations of the FDCPA, TCPA, and Buffalo Municipal Code. (Doc. 1.) Although the Complaint was served on October 21, 2019, Defendant initially defaulted and only answered in February 2020. (Doc. 6.)

[ 1 ]

On April 26, 2021, Plaintiff served written discovery on Defendant's counsel. (Doc. 11, Page 2 of 5.) On June 24, 2021, Plaintiff moved to compel responses. (*Id.*) In his motion to compel, Plaintiff stated:

> Although Defendant's counsel has repeatedly stated that his client will make a production, Plaintiff's counsel simply does not believe this. In Plaintiff's counsel's experience, Mr. Peltan's clients never produce any documents in discovery until a motion to compel is filed. *See, e.g.*, *Lennon v. Allegiance Accounting Servs.*, No. 19-CV-1541V(F), 2020 U.S. Dist. LEXIS 213785, at \*2 (W.D.N.Y. Nov. 12, 2020) (order Mr. Peltan to pay fees for failure to produce discovery); *Sandhu v. New Era Asset Mgmt., LLC*, No. 19-CV-1239V(F), 2020 U.S. Dist. LEXIS 186438, at \*3 (W.D.N.Y. Oct. 5, 2020) (same); *Munoz v. Coastal Capital Processing, LLC*, No. 19-CV-1312Sk(F), 2020 U.S. Dist. LEXIS 213784, at \*2 (W.D.N.Y. Nov. 12, 2020) (same).

(*Id.*) This attitude was fully justified. Although the Court granted Plaintiff's motion to compel on July 13, 2021, and ordered Defendant to respond "within fourteen (14) days," (Doc. 12), Defendant still has not produced anything.

**II.    STATEMENT OF FACTS.**

    A.    <u>Defendant Failed to Respond to Plaintiff's Requests for Admission, Which Are Now Deemed to be Admitted Pursuant to Rule 36(a)(3).</u>

Federal Rule of Civil Procedure 36(a)(3), states "[a] matter is admitted unless, withing 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Plaintiff's Requests for Admission are attached as Exhibit 2 to his Motion to Compel. (Doc. 11-2.)

[ 2 ]

Defendant should be deemed to have admitted the following:

- Plaintiff is a "consumer" for purposes of the Fair Debt Collection Practices Act.

- No employee or owner of Defendant is a licensed attorney.

- Defendant has never filed a lawsuit on an alleged consumer debt.

- Defendant left pre-recorded voicemails for Plaintiff.

- "Green Square Services" is not the true name of Defendant.

- At no time did Plaintiff give Defendant prior express consent to contact Plaintiff using a pre-recorded voice.

(Doc. 11-2 at Pages 8–9 of 12.)

Defendant also admitted to the reasonableness of Plaintiff's counsel's billing rates, among other things. (*Id.* at Page 9 of 12, RFA Nos. 7–13.)

B.   Defendant's Answer Admits It Was Collecting on Plaintiff's Debt.

In its Answer, Defendant admitted "that it is located in New York and at times a 'debt collector' as defined by the FDCPA, but lacks knowledge or information sufficient to form a belief as to whether it is a 'debt collector' [under the FDCPA]." (Doc. 6 at ¶¶ 5, 18–19.) Defendant also admitted "that Plaintiff became delinquent in paying one or more debts in their names, but Defendant lacks knowledge or information sufficient to form a belief regarding whether the debt or debts is a 'Debt' as defined by the FDCPA." (*Id.* at ¶ 7.) Additionally, Defendant admitted "being tasked with servicing unpaid accounts in Plaintiff's name." (*Id.* at ¶ 8.)

[ 3 ]

Importantly, Defendant "admits that it left voicemails." (*Id.* at ¶ 9.) Defendant's Answer also states that each voicemail "speaks for itself," (*id.* at ¶¶ 12–13), but otherwise does not deny the following allegations made by Plaintiff in his Complaint:

- Defendant has no intention or ability to sue Plaintiff, and it never has had any intention or ability to sue Plaintiff.

- The matter was not "scheduled" to be "recalled" beyond any point, and the "client" never intended to pursue or be awarded any "appropriate relief."

(*See* Doc. 1, Page 3 of 7, ¶¶ 12–13.) Defendant's Answer further lists a handful of boilerplate defenses, with the most relevant one likely being the bona fide error defense to the FDCPA under 15 U.S.C. 1692k(c). (Doc. 6, Page 7 of 9.)

C.     Plaintiff's Declaration Fills in Any Missing Facts.

To fill in any potential gaps in the record, Plaintiff has attached a declaration as Exhibit 1, and has included contemporaneously generated computer transcripts of the voicemails he received as Exhibit 2. Plaintiff recalls that Defendant called him on his residential cell phone line regarding a personal loan used to pay for living expenses while he was in college, such as rent, groceries, utilities, and personal items. (Ex. 1 at ¶¶ 4–5.) He clarifies that he has not taken out any loans for business use (*id.* at ¶ 6), thus ensuring that the "debt" at issue is truly a consumer debt under the FDCPA. He also details why he didn't agree to pay on the debt—namely, that he believed he had already settled the same debt with a previous collector (*id.* at ¶ 8), and explains that he was indeed misled into believing that Defendant would sue him (*id.* at ¶¶ 9–13).

[ 4 ]

### III. LEGAL STANDARD

Summary judgment is proper when there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Further, when deciding a motion for summary judgment, the evidence and inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The Court does not "weigh the evidence and determine the truth of the matter" but "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### IV. ARGUMENT

#### A. <u>Plaintiff is Entitled to Summary Judgment on His FDCPA Claims.</u>

"In order to establish a claim under the FDCPA, the following elements must be present: (1) [the] plaintiff is a 'consumer' as defined by the FDCPA; (2) the 'debt' must arise out of transactions that are 'primarily for personal, family or household purposes'; (3) [the] defendant is a 'debt collector' as defined by the FDCPA; and (4) [the] defendant must have violated one of the specific statutory prohibitions regarding debt collection communication and/or activity." *Randle v. AC Asset Servs. LLC*, No. 19-CV-01074-LJV, 2020 U.S. Dist. LEXIS 178384, at *5–6 (W.D.N.Y. Sep. 28, 2020) (citing *Wallace v. Manley Deas Kochalski, LLC*, No. 3:13-CV-00031-H, 2013 U.S. Dist. LEXIS 92956, 2013 WL 3338687, at *3 (W.D. Ky. July 1, 2013)).

       1.       *Plaintiff is a "Consumer" as Defined the FDCPA.*

The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 USCS § 1692a. Defendant admitted that Plaintiff is a "consumer" when it failed to response to Request for Admission No. 1. (Doc. 11-2 at Pages 8–9 of 12.)

       2.       *The Subject "Debt" Arose for Personal, Family, or Household Purposes.*

The FDCPA defines the term "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5), *see Cohen v. Potenza*, No. 15-CV-3825 (SJF)(AYS), 2016 U.S. Dist. LEXIS 153244, at *22–23 (E.D.N.Y. Nov. 3, 2016).

Although the statute does not define the term "transaction," "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (quotations and citation omitted); *accord Beauvoir v. Israel*, 794 F.3d 244, 247 (2d Cir. 2015); *Eades v. Kennedy, PC Law Offices*, 799 F. 3d 161, 170 (2d Cir. 2015).

"To determine whether a particular debt is commercial or personal in nature, courts examine the transactions as a whole, paying particular attention to the purpose for which the credit was extended[.]" *Scarola Malone & Zubatov LLP v. Verizon Commc'ns, Inc.*, No. 14-cv-4518, 2015 U.S. Dist. LEXIS 82053, 2015 WL 3884211, at * 4 (S.D.N.Y. June 24, 2015), *aff'd*, 638 F. App'x 100 (2d Cir. Feb. 11, 2016).

[ 6 ]

Generally, the Second Circuit has held that a transaction is primarily for personal, family, or household purposes where there is no evidence that the transaction arose out of a business transaction. *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 333–34 (D. Conn. 2012); *see also Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006) ("The term 'debt' as defined under the FDCPA refers to '*any obligation of a consumer* to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are *primarily for personal, family, or household purposes*.' Accordingly, actions arising out of commercial debts are not covered by the protective provisions of the FDCPA.") (quoting 15 U.S.C. §1692a(5)).

Here, Defendant has admitted, in its Answer, that it was collecting on a delinquent account in Plaintiff's name. Plaintiff states, in his declaration, that any accounts he has taken out have been for personal, family, or household purposes—such as paying for groceries. ("Ex. 1" at ¶¶ 4–5.) Moreover, he has never taken out any loans for anything other than personal use. (*Id.* at ¶ 6.) Defendant has not come forward with any evidence to the contrary. Thus, the account is a "debt" for purposes of the FDCPA.

   3. *Defendant Is a "Debt Collector" as Defined by the FDCPA.*

Defendant repeatedly admits in its Answer that it is *sometimes* a debt collector. A "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6).

[ 7 ]

Defendant's admission that it is *sometimes* a debt collector under the FDCPA is telling. By this, Plaintiff takes Defendant to mean that its generally operates as a debt collector within the meaning of the statute, but sometimes the statute does not apply — in particular, where the Plaintiff is not a "consumer" or has not incurred a "debt." Thus, because Plaintiff has established that he is a "consumer" who incurred a "debt," then in this instance, Defendant admits that it is a "debt collector."

As further evidence, Plaintiff also attaches Defendant's 2019 license and application to become a registered "debt collector" with the City of Buffalo. (FOIL Response from the City of Buffalo, "Ex. 3."). The license states that Premier Recovery Group is licensed: "To collect, advertise to collect, attempt to collect or hold himself or itself out as able or willing to collect, for hire or remuneration in any form, any bill, debt, demand, sum of money or other thing of value due or claimed to be due or owing to any other person, firm or corporation." (*Id.*)

The permit is evidence that Defendant "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." It is also subject to judicial notice because it is a public record and is beyond dispute. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice of such governmental records.").[1] Thus, Defendant is a "debt collector" under 15 U.S.C. 1692a(6).

---

[1] A list of Buffalo-licensed debt collectors is available at https://apps.city-buffalo.com/apps/LicContractors/search.aspx. The license was obtained by way of a Freedom of Information Law (FOIL) request to the City of Buffalo.

    4.  *Defendant Violated the FDCPA According to the Least Sophisticated Consumer Standard.*

To determine whether an FDCPA violation has occurred, Courts in the Second Circuit use the "least sophisticated consumer" standard. *Church v. Fin. Recovery Servs.*, No. 16-CV-6391-FPG, 2018 U.S. Dist. LEXIS 44540, at *13 (W.D.N.Y. Mar. 19, 2018) (citing *Avila*, 817 F.3d at 75); *see also, e.g., Taylor*, 252 F. Supp. 3d at 351 (noting that the standard requires "an objective inquiry," making it appropriate to apply as a matter of law at the summary judgment stage). Through that lens, Courts assess "how the least sophisticated consumer[] . . . would understand" the communication at issue. *Avila*, 817 F. 3d at 75. Moreover, the Court can turn to Plaintiff's declaration to see how he actually did view the communications from Defendant.

    a.  <u>Defendant's Conduct Violated FDCPA § 1692d(6)</u>

Under the FDCPA, § 1692d(6) prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). "The relatively few courts construing [s]ection 1692d(6) in similar contexts have uniformly held that it requires a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business." *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 949 (D. Minn. 2008); accord *Flores v. RMA Recovery Grp. LLP*, No. 17-CV-402-LJV, 2021 U.S. Dist. LEXIS 77825, at *7 (W.D.N.Y. Apr. 22, 2021) (Vilardo, J.).

[ 9 ]

Here, there is no dispute that "Green Square Services" is not the true name of Defendant. (Doc. 11-2, RFA No. 5.) Nevertheless, this is the name that Defendant used in its voicemails to Plaintiff. Thus, Plaintiff is entitled to judgment on his § 1692d(6) claim.

>  b. Defendant's Conduct Violated FDCPA § 1692e – False or Misleading Representations

FDCPA § 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e. The Second Circuit has found that language is sufficient to violate this subsection of the FDCPA when "the 'least sophisticated consumer' would interpret this language to mean that legal action was authorized, likely and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (language stating defendant debt collector was authorized "to proceed with whatever legal means is necessary to enforce collection" was misleading); *see also Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 216 (9th Cir. 1979).

Here, the language in the voicemail that Plaintiff was receiving a "formal notification" from the "offices" of Green Square Services regarding a "claim" that was in "imminent default" is misleading. Defendant indicated that its "client" would "pursue and likely be awarded the appropriate relief." Defendant, however, had no ability or intention to sue Plaintiff. (Doc. 11-2, RFA Nos. 2–4.)

[ 10 ]

Moreover, Defendant failed to deny in its Answer that "[t]he matter was not 'scheduled' to be 'recalled' beyond any point, and the 'client' never intended to pursue or be awarded any 'appropriate relief.'"  (Doc. 1, Page 3 of 7.)  Taken as a whole, then, Defendant violated 15 U.S.C. § 1692e(5) because the least sophisticated consumer would believe that Defendant was threatening legal action, but in reality, Defendant (or its "client") had no intention to follow through on this threat.

Moreover, Defendant admits that it was collecting on an account in Plaintiff's name.  However, in its voicemails, it did not make any of the necessary "mini-Miranda" disclosures to Plaintiff—in particular, it "failure[d] to disclose . . . that the communication is from a debt collector," thus violating 15 U.S.C. § 1692e(11).

Additionally, Defendant violated § 1692e(14) by using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization."  Here, Defendant used the name "Green Square Services," in its voicemails, which is not the true name of its business.

Plaintiff's declaration confirms that he was misled as to the true name of Defendant's business, and that he was also misled into believing that Defendant would sue him.  This caused him to lose time, as well as to experience significant anxiety.

     5.    *Defendant's Bona Fide Error Defense Fails.*

At the summary judgment stage, the burden of establishing affirmative defenses lies with the party asserting them.  *Lee v. Sandberg*, 136 F. 3d 94, 101 (2d Cir. 1997).  Defendant has failed to respond to Plaintiff's discovery, and thus has not developed any of its defenses.

[ 11 ]

Defendant has asserted a *bona fide* error defense, but not provided any discovery to support it.  Under this defense, "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. 1692k(c).  To prevail, Defendant must show that its violations were not intentional.

The phrase "'not intentional' covers only a defendant who did not *intend* to commit the *act* that violated the FDCPA."  *Allen v. Checkredi of Ky., LLC*, No. 09-103-DLB, 2010 U.S. Dist. LEXIS 122301, at *29 (E.D. Ky. Nov. 17, 2010) (emphasis added).  Thus, the bona fide error defense "only applies to procedural or clerical errors."  *Bassett v. I.C. Sys.*, 715 F. Supp. 2d 803, 813 (N.D. Ill. 2010); *see also McNall v. Credit Bureau of Josephine Cty., Inc.*, No. CV 07-3075-CL, 2010 U.S. Dist. LEXIS 85619, at *9 (D. Or. Aug. 19, 2010) (bona fide error defense cannot apply where the defendant "made a conscious decision" that was "not an unintended factual or clerical mistake.").

Here, Defendant admits that it was tasked with servicing Plaintiff's account.  Because Defendant called Plaintiff and left him messages relating to the debt, its actions were intention.  No clerical errors or mistakes of fact exist here.

[ 12 ]

B.     Plaintiff is Entitled to Default Judgment on his TCPA Claim.

"It is unlawful for any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. . ." 47 U.S.C. § 227(b)(1)(B).  Plaintiff has a private right of action, and an award of $500 per violation under § 227(b)(3)(B) is "mandatory." *Charvat v. NMP, LLC*, No. 2:09-cv-209, 2012 U.S. Dist. LEXIS 139505, at *14 (S.D. Ohio Sep. 27, 2012).  This amount may be trebled for "willful" or "knowing" violations.  47 U.S.C. § 227(b)(3)(B)–(C).

Here, the Requests for Admission establish that "Defendant left pre-recorded voicemails for Plaintiff" (RFA No. 4) and "At no time did Plaintiff give Defendant prior express consent to contact Plaintiff using a pre-recorded voice." (RFA No. 6.)  Plaintiff's declaration further establishes that his telephone line is for personal use, thus making it a "residential" line.  (Ex. 1 at ¶ 3.)

Defendant's counsel argues that the U.S. Supreme Court's recent decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) negates Plaintiff's claim.  This is wrong.  Facebook dealt with so-called *autodialer* claims, but expressly disavowed abolishing claims for pre-recorded messages:

> Duguid last warns that accepting Facebook's interpretation will "unleash" a "torrent of robocalls." . . . To begin with, Duguid greatly overstates the effects of accepting Facebook's interpretation.  The statute separately prohibits calls using "an artificial or prerecorded voice" to various types of phone lines, including home phones and cell phones, unless an exception applies. See 47 U. S. C. §§227(b)(1)(A) and (B). ***Our decision does not affect that prohibition.***

*Id.* at 1172–73 (emphasis added).

[ 13 ]

Thus, Plaintiff is entitled to judgment. At a minimum, then, Plaintiff has established that three pre-recorded calls were made to him by Defendant without his consent. This entitles Plaintiff to at least $1500.

With respect to the "willful" or "knowing" prong of the analysis to determine trebling, the violations were "knowing" because Defendant did not call Plaintiff by mistake. The violations speak for themselves—Defendant purposefully called Plaintiff in order to collect upon a debt. Nor can Defendant point to anything in the record to show that it had a good faith belief that Plaintiff had consented to the calls.

## V.   CONCLUSION

Taking into account the admissions in Defendant's Answer; its lack of response to Plaintiff's Requests for Admission; its lack of response to this Court's Order compelling it to produce discovery; and Plaintiff's evidence and declaration, this Court should grant summary judgment in Plaintiff's favor on his FDCPA and TCPA claims. A hearing should then be scheduled on the amount of damages.

Respectfully submitted,

/s Jonathan Hilton
Jonathan L. Hilton, Esq.
Partner | Hilton Parker LLC
Tel: (614) 992-2277
Fax: (614) 927-5980
7544 Slate Ridge Blvd.
Reynoldsburg, OH 43068
jhilton@hiltonparker.com
www.hiltonparker.com